IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12CR172 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | UNITED STATES OF AMERICA'S |
| | ) | RESPONSE IN OPPOSITION TO |
| WILLIAM B. SILVIUS, | ) | DEFENDANT'S MOTION TO DISMISS |
| | ) | <u>THE INDICTMENT</u> |
| Defendant. | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney, and Robert W. Kern and Chelsea S. Rice, Assistant U.S. Attorneys, and hereby submits this response in opposition to defendant's Motion to Dismiss the Indictment. For the foregoing reasons, the United States respectfully requests this Court to deny defendant's motion.

I. <u>Statement of the Facts</u>

    A. <u>Background</u>

Microsoft, Sony, and Nintendo manufacture and market digital video game consoles, including the "Microsoft Xbox," "Microsoft Xbox 360," "Sony Playstation," and "Nintendo Wii." These corporations also create and publish digital video games, which are designed to be

played on the corresponding game console.  These video games are protected under the Copyright Act of 1976, Title 17 United States Code, Sections 101, *et sec*.  To protect the Xbox, Xbox 360, Playstation, and Wii related copyrights and those of the legitimate licensees, Microsoft, Sony and Nintendo have designed digital copyright protection systems which are integrated into the software code of the game consoles and video games.  These copyright protection systems include two software designs: Digital Encryption and Authentication Codes.

With regards to digital encryption, the software code for every Xbox, Xbox 360, Playstation, and Wii game is digitally encrypted according to a specific algorithm, which only Xbox, Xbox 360, Playstation and Wii consoles, respectively, are programmed to decrypt, thereby allowing authorized users to play video games designed and licensed for each respective system.

With regards to the use of authentication codes, every authorized or legitimate Xbox, Xbox 360, Playstation and Wii video game disc contains an authentication code, embedded within the encrypted game code, which is read by the appropriate video console software to verify that the video game in question is an authorized or legitimate version of the game, and it is being run on the appropriate type of game console.  The authentication code "hand shake" between the game consoles and the video game discs is intended to prevent such video game consoles from playing unauthorized or pirated reproductions of the encrypted video game code.  The encryption of the software code for each video game is intended to prevent the use of alternative game platforms to bypass the authentication / verification process.  It is also intended to protect the copyright holders by preventing users from playing unauthorized or pirated versions of video games.

Individuals and organizations intending to defeat or "hack" Xbox, Xbox 360, Playstation,

and Wii copyright protection systems have developed computer chips commonly known as "modification chips" or "modchips" to circumvent the copyright security system employed by the Xbox, Xbox 360, Playstation, and Wii game consoles and authorized and licensed Xbox, Xbox, Playstation, and Wii video games. These modchips contain software code that circumvents the authentication process or "hand shake" between the video game console and authorized or legitimate video games. When a modchip is installed on the main circuit board of a video game console it enables the game console to play authorized versions of video games as well as unauthorized or pirated video games.

Another method individuals have used to defeat or "hack" the copyright protection system of a Sony Playstation 2 is by using a "swap disk." These devices are used to circumvent the copyright security system incorporated into the Playstation 2 console and Playstation 2 games. A "swap disk" is a CD-ROM that bypasses Sony's verification process when loading a Playstation 2 game, circumventing the technological protection measures built into the console by Sony Computer Entertainment America, Inc., to prevent the playback of pirated and counterfeit games as a means of protecting game publishers' copyrighted material. Once used in a Sony Playstation 2 game console, the "swap disk" enables the console to play both authorized versions of Playstation 2 games and unauthorized or pirated copies stored on optical disks.

  B. Thegiantstore.com

In November 2006, agents with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Cleveland, Ohio learned that the website www.thegiantstore.com was selling illegal modification chips for the Xbox gaming console and illegal swap discs for the Sony Playstation 2 gaming console. Agents verified that the website

was associated to the defendant, William Silvius.

On November 29, 2006, federal agents, acting in an undercover capacity from Cleveland, Ohio, sent an e-mail to sales@thegiantstore.com inquiring if Xenium modification chips were in stock.  The Xenium modification chips are used to modify the Microsoft Xbox gaming console.  The defendant responded on that same day, stating that the Xenium modification chips were currently in stock and money orders were accepted as payment.  On November 30, 2006, federal agents, again acting in an undercover capacity from Cleveland, Ohio, visited the website [www.thegiantstore.com](www.thegiantstore.com) and ordered three (3) Xenium modification chips.  The cost of the modification chips was $84.17, including shipping and handling, which was paid via a money order.  Investigation revealed that this money order was deposited into an account associated with Silvius.  On December 14, 2006, federal agents received the three (3) Xenium modification chips at an undercover mailbox located in Strongsville, Ohio.  An invoice enclosed with the package indicated "TheGiantStore.com, P.O. Box 535, Homosassa Springs, FL 34447."  Investigation revealed that this address was associated with Silvius.

Federal agents made another undercover purchase from [www.thegiantstore.com](www.thegiantstore.com) in June 2007.  This time, Silvius sent the agents five (5) AppleX7 modification chips and four (4) Magic 3 Swap Discs, for a total of $213.99, including shipping and handling.  These items were shipped from Silvius' business and the money order sent as payment for them was deposited into a bank account associated with Silvius.

In August 2007, federal agents executed a search warrant at Silvius' business, located in Tampa, Florida.  During the search, agents discovered a number of items associated with

creating modchips and swap discs, as well as a number of modchips, swap discs, and already modified gaming consoles.

All of the modchips and swap discs sent by Silvius to the federal agents and seized during the search warrant of Silvius' business were examined by experts with the Entertainment Software Association and/or Nintendo. These experts verified that these modchips and swap discs were designed to circumvent the technological protection measures built into Xbox, Playstation, and Wii game consoles.

II.  Law and Analysis

Silvius attempts to use his motion to dismiss the indictment as an opportunity to argue the sufficiency of the evidence against him. However, this is not the appropriate stage of the proceedings to argue the strength of the government's case. Courts "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictments allegations." *United States v. Gurrier*, 669 F.3d 1, 4 (1st Cir. 2011) (internal citations omitted). Indeed, the Supreme Court has concluded that "in the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charge on the merits.'" *Costello v. United States*, 350 U.S. 359, 363 (1956). When a pretrial motion raises questions of fact intertwined with issues involving the merits of the case, such as Silvius has done here, a court should defer determination of that matter until trial. *United States v. Knox*, 396 U.S. 77, 83 (1969).

Courts may test the sufficiency of an indictment by considering solely the allegations made in the indictment, which should be accepted as true for purposes of a motion under Federal Rule of Criminal Procedure 12(b). *United States v. Sampson*, 371 U.S. 75 (1962). To pass

5

constitutional muster, the indictment against Silvius must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64 1962). Because the one-count indictment against Silvius satisfies both of these prongs, the indictment is facially valid and his motion to dismiss should be denied.

    The indictment against Silvius clearly sets out all of the elements of the charged offense and gives him notice of the charges he faces. As Silvius recognizes in his motion, he has been charged with one count of violating the Digital Millennium Copyright Act ("DMCA"), in violation of Title 17, United States Code, Sections 1201(a)(2)(A) and 1204(a). The elements for this offense are that Silvius (1) willfully; (2) manufactured, imported, offered to the public, provided, or otherwise trafficked in a technological product, service, device, component, or part thereof; (3) the technology, products, services, devices, components, or parts thereof was designed to effectively circumvent technological measures to control access to a work copyrighted under Title 17 of the United States Code; and (4) he did so for commercial advantage or private financial gain. 17 U.S.C. §§ 1201(a)(2)(A) and 1204(a). Each of these elements is detailed in the indictment, as well as the time period in which Silvius is alleged to have committed the offense (June 11, 2007 to August 1, 2007).

    All of Silvius' arguments in his motion to dismiss are based on unsupported factual statements that relate to the weight of the government's evidence, not to whether the indictment is facially valid. Significantly, Silvius has not made any allegations of governmental misconduct

or bad faith in bringing the charges against him.  There is also no claim that he was previously charged with the same offense and either acquitted or convicted.  Likewise, Silvius has not made any claim that the indictment is legally insufficient on its face, or that it fails to adequately inform him of the charges against him.  Indeed, Silvius' lengthy motion to dismiss, in which he details his defenses to the indictment, evidences his understanding of the nature of the charges against him.

As detailed in the factual background above, Silvius sold modchips and swap discs to undercover agents, for profit, and these modchips and swap discs were designed to circumvent the copyright protections on the Sony, Microsoft, and Nintendo game consoles.  Silvius' bald assertions in his motion, including his claims that he did not have "the requisite criminal intent to commit any crime" and "cannot be liable under the DMCA" are questions of fact, not law.  As the Supreme Court stated in *Costello*, the Fifth Amendment's grand jury guarantee does not give defendants the right to a "preliminary trial to determine the competency and adequacy of the evidence" underlying the indictment.  *Costello*, 350 U.S. at 363.  Silvius' intent is an issue that turns in large part on the credibility and demeanor of witnesses, and is peculiarly within the province of the jury.  *United States v. Long*, 952 F.2d 1520, 1525 (8th Cir. 1991).  Based upon the facts presented in this case, the United States respectfully submits that a jury can reasonably conclude that William Silvius willfully manufactured, offered to the public, provided or otherwise trafficked in technology, products, devices, components or parts thereof, which were primarily designed to circumvent copyright protections on various gaming consoles.

III.     Conclusion

The indictment in this case is constitutionally sufficient because it contains the essential elements of the charge against Silvius, apprises him of what he must defend against, and allows him to argue against double jeopardy.  Therefore, Silvius' motion to dismiss the indictment be denied.

                          Respectfully submitted,
                          STEVEN M. DETTELBACH
                          United States Attorney

By:    /s/ Robert W. Kern
           Robert W. Kern (0005161)
           Assistant U.S. Attorney
           Suite 400, U.S. Courthouse
           801 West Superior Avenue
           Cleveland, Ohio 44113
           Tel. No. (216) 622-3836
           Fax No. (216) 522-2403
           E-mail: Robert.Kern@usdoj.gov

By:    /s/  Chelsea S. Rice
           Chelsea S. Rice (0076905)
           Assistant U.S. Attorney
           Suite 400, U.S. Courthouse
           801 West Superior Avenue
           Cleveland, Ohio 44113
           Tel. (216) 622-3752
           Fax (216) 522-8355
           E-Mail: Chelsea.Rice@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on August 20, 2012, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Chelsea S. Rice
Chelsea S. Rice
Assistant U.S. Attorney