IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:12 CR 172 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM B. SILVIUS, | ) | **DEFENDANT'S REPLY TO** |
| | ) | **GOVERNEMENT'S RESPONSE TO** |
| Defendant. | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS THE INDICTMENT** |

    Defendant William B. Silvius, by and through his attorney of record, Jaime P. Serrat, hereby replies to the Government's Response to Defendant's Motion to Dismiss the Indictment. Defendant incorporates herein by reference all of the arguments made and exhibits offered in his original Motion to Dismiss.

    Federal Rule of Criminal Procedure 12(b)(3)(B) permits defendants to move for dismissal of an indictment on the grounds that it "fails to state an offense."  A motion to dismiss the indictment must be tested by its sufficiency to charge an offense. *United States v. Sampson*, 371 U.S. 75,  78-79 (1962).  The indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418  U.S.  87, 117  (1974).  A motion to dismiss is "'capable of determination' before trial if it involves questions of law rather than fact." *United States v.  Shortt Accountancy Corp.*,785 F.2d  1448,  1452  (9th  Cir. 1986).  But the court may determine factual issues that do not "determine[e] the validity of the defense."  *Id.*

Mr. Silvius claims that 17 U.S.C.§§ 1201 is unconstitutionally vague and overbroad on its face as it is applied to the defendant in this case. The defendant argues that a criminal statute, in order to comply with the constitution, must provide a reasonable person with adequate notice of the conduct which is prohibited and be structured in such a way that it does not encourage arbitrary and discriminatory enforcement. The defendant argues that 17 U.S.C.§§ 1201 is deficient in both these respects." As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). Moreover, "the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement.' " 461 U.S. at 358, 103 S.Ct. at 1858 (citing *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

Mr. Silvius argues in his Motion to Dismiss that holding him liable under the 17 U.S.C.§§ 1201 would constitute a misapplication of the law.  Mr. Silvius sold unflashed modification chips, which were incapable of circumventing any technology.  He, as a reasonable person, was never provided with adequate notice of the conduct which is prohibited under 17 U.S.C.§§ 1201.  Section 1201(2)(A) prohibits products that are "primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title." Jason Allen, an Internet Anti-Piracy Specialist from Nintendo of America, concluded that these products, technologies, services or devices (mod chips) have only limited commercially significant purpose or use other than to circumvent Nintendo's

technological protection measures." The government had to obtain and expert witness from Nintendo to define what products are "primarily designed for the purpose of circumventing technology."  Primarily is defined as "for the most part.[1]" The government has therefore concluded, through an expert witness, that mod chips meet this definition of having the purpose of "primarily" breaking the law.  Based upon a reading of Mr. Allen's conclusion, he has established that there are legal ways to use mod chips that would benefit international consumers, consumers that design their own games, and consumers that want to back up and play their legally purchased video games. There is no alternative out there for these consumers to be able to legally perform such above listed functions on a video game console they purchased.

Although there are illegal uses of mod chips, such as playing illegally downloaded video games, the definition of 17 U.S.C.§§ 1201 is unconstitutionally overbroad in its limitation of citizens to perform legal functions with their gaming consoles.  Just because an item might be "primarily used" for doing something illegal, such as a pipe or a bong purchased from a head shop for smoking illegal drugs, doesn't mean that the government should have the ability to prohibit the sale of that item for consumers that want to use it for legal purposes, such as smoking tobacco.  Once that bong or pipe is used to smoke an illegal substance, it then becomes illegal drug paraphernalia.  A mod chip is factually extremely similar to the legality of pipes and bongs.  On its own, a mod chip is incapable of performing any illegal functions.  It is how the consumer chooses to use the product that makes it either illegal or legal. Therefore, the statute is overly broad as applied to mod chips because it restricts both legal and illegal actions.

The lack of criminal intent to commit any crime in this matter from Mr. Silvius supports the deficiency of 17 U.S.C.§§ 1201. A reasonable person would not have adequate notice of the conduct that is prohibited; in this case, that conduct being the selling of un-flashed mod chips.

---

[1] Merriam Webster Dictionary. http://www.merriam-webster.com/dictionary/primarily.

The language of 17 U.S.C.§§ 1201 never mentions the term "mod-chip, modification chip, video game, swap disk ect." These are all items that the government deems to fit, through an expert witness, as having the "primary purpose of circumventing technology" under the overly broad and vague statute. An ordinary person reading the penal statute would be unable to define the selling of mod chips as a criminal offense.  The Supreme Court requires statutes to be defined with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  Mr. Silvius, as part of "Operation Tangled Web," was one of ten (10) individuals the government decided to arbitrarily and discriminately enforced against.  Mr. Silvius is one of thousands mod chip retailers in the United States, yet somehow, he was targeted to make an example of under pressure from large video game companies.

Therefore, Mr. Silvius renews his arguments made in his original Motion to Dismiss and submits to this honorable Court that 17 U.S.C.§§ 1201 is unconstitutionally vague and overbroad on its face and it is applied to the defendant in this case and this matter should be dismissed against him in the interest of justice.

      Respectfully Submitted,

/s/ Jaime P. Serrat /s/
JAIME P. SERRAT, (#0031660)
Attorney for the Defendant
2000 Standard Building
1370 Ontario Street
Cleveland, OH 44113
(216) 696-2150
(216) 696-1718- fax
serratlaw@hotmail.com

4

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jaime P. Serrat /s/_____
JAIME P. SERRAT, (#0031660)