# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:12CR172 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| WILLIAM B. SILVIUS, | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is before the Court on Defendant William B. Silvius' Motion to Dismiss the Indictment. The Motion to Dismiss the Indictment is DENIED for the reasons that follow.

## I. FACTUAL BACKGROUND

Defendant Silvius is charged with one count of violating the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201(a)(2)(A) and 1204(a). The elements for this offense are that Mr. Silvius allegedly (1) willfully; (2) manufactured, imported, offered to the public, provided, or otherwise trafficked in a technological product, service, device, component, or part thereof; (3) the technology, products, services, devices, components, or parts thereof was designed to effectively circumvent technological measures to control access to a work copyrighted under Title 17 of the United States Code; and (4) he did so for commercial advantage or private financial gain. 17 U.S.C. §§ 1201(a)(2)(A) and 1204(a). Each of these elements is detailed in the indictment, as well as the time period during which Mr. Silvius is alleged to have committed the offense (June 11, 2007 to August 1, 2007).

1

The allegations against Mr. Silvius arise from the alleged sale of "modification chips" or "modchips" and "swap disks" via his website www.thegiantstore.com. Modchips purportedly allow circumvention of the copyright security systems employed by digital video game consoles manufactured and marketed by Microsoft, Sony, and Nintendo. According to the government, these modchips contain software code that circumvent the authentication process or "hand shake" between the video game console and authorized or legitimate video games. When a modchip is installed on the main circuit board of a video game console, it enables the game console to play authorized versions of video games as well as unauthorized or pirated video games.

The government also alleges that swap disks have been used to defeat or "hack' the copyright protection system of Sony Playstation 2 digital video game consoles is by using a "swap disk." Once used in a Sony Playstation 2 game console, the "swap disk" enables the console to play both authorized versions and unauthorized or pirated copies of Playstation 2 games stored on optical disks.

The government asserts that in November 2006, agents with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), in Cleveland, Ohio learned that the website www.thegiantstore.com was selling illegal modification chips for the Xbox gaming console and illegal swap discs for the Sony Playstation 2 gaming console. In November and June of 2007, undercover federal agents purchased modification chips from www.thegiantstore.com. Undercover federal agents also purchased swap disks during the June 2007 buy. Federal agents allegedly verified that the www.thegiantstore.com website was associated with Mr. Silvius. The undercover purchases were paid for via money orders that were deposited in a bank account also purportedly associated with Mr. Silvius. The goods purchased

2

were shipped to a post office box address in Strongsville, Ohio.

The government retained experts to examine the items purchased from Mr. Silvius' business. The experts concluded that modchips have only limited commercially significant purpose or use other then to circumvent (Nintendo's) technological protection measures.

In August 2007, federal agents executed a search warrant at Mr. Silvius' business, located in Tampa, Florida. During the search, agents allegedly discovered a number of items associated with creating modchips and swap discs, as well as a number of modchips, swap discs, and already modified gaming consoles.

## II. LAW AND ANALYSIS

Mr. Silvius' Motion to Dismiss challenges the indictment on several grounds. First, Mr. Silvius argues that he did not "circumvent a technological measure" for purposes of § 1201(a)(2)(A), because he never physically altered a gaming console by installing a modchip, and had numerous disclaimers and warnings throughout his website stating that the purchasers of modchips had to use them in a legal manner. In addition, Mr. Silvius claims that the modchips that he sold were "unflashed," and therefore did not, when sold and shipped, contain the programs necessary to circumvent copyright protections.

Second, Mr. Silvius claims that § 1201(a)(1)(A) does not apply to him because the government cannot show that any of the alleged modification chips sold by Mr. Silvius were actually used in an illegal way. He criticizes the government for the lack of evidence that the modchips sold by Mr. Silvius' company were ever used to infringe anyone's copyright; he claims that there is no nexus between the goods he sold and any actual copyright infringement. Mr. Silvius argues that it would be misapplication of the DMCA to hold him liable under the

3

circumstances.

Third, Mr. Silvius argues that the fair use doctrine protects his activities.  He argues that to hold him liable under the DMCA would be an anticompetitive misuse of the DMCA that would encroach on carefully crafted consumer rights.

Further, Mr. Silvius argues, for the first time in his reply brief, that DMCA § 1201 is void as unconstitutionally vague.  According to Mr. Silvius, § 1201 is unconstitutional because it prohibits both illegal activities and certain legal ones.

Mr. Silvius' arguments urging the Court to dismiss the indictment are unavailing.  In essence, Mr. Silvius attempts to use his Motion to Dismiss the Indictment as an opportunity to argue the sufficiency of the evidence against him.  However, this is not the appropriate stage of the proceedings to challenge the strength of the government's case.  Indeed, courts "routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictments allegations."  *United States v. Gurrier*, 669 F.3d 1, 4 (1st Cir. 2011) (internal citations omitted).  The Supreme Court has concluded that "in the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury 'is enough to call for trial of the charge on the merits.'" *Costello v. United States*, 350 U.S. 359, 363 (1956).  When a pretrial motion raises questions of fact intertwined with issues involving the merits of the case, such as Mr. Silvius has done here, a court should defer determination of that matter until trial.  *United States v. Knowx*, 396 U.S. 77, 83 (1969).

Courts may test the sufficiency of an indictment by considering solely the allegations made in the indictment, which should be accepted as true for purposes of a motion under Federal Rule of Criminal Procedure 12(B).  *United States v. Sampson*, 371 U.S. 75 (1962).  To pass

constitutional muster, the indictment against Mr. Silvius must satisfy a two-prong test. First, the indictment must set out all of the elements of the charged offense and give notice to the defendant of the charges he faces. Second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)).

The one-count indictment against Mr. Silvius satisfies both of these prongs. As Mr. Silvius recognizes in his Motion to Dismiss, he is charged with one count of violating the DMCA, 117 U.S.C. §§ 1201(a)(2)(A) and 1204(a). The elements of the offense are set forth clearly in the indictment. In addition, the indictment specifies that Mr. Silvius is alleged to have committed the offense between June 11, 2007 and August 1, 2007.

Mr. Silvius' Motion to Dismiss neglects to challenge the facial validity of the indictment. Mr. Silvius does not make any claim that the indictment is legally insufficient on its face, or that it fails to adequately inform him of the charges. Indeed, the Motion to Dismiss, which details Mr. Silvius' defenses to the indictment, bears witness to Mr. Silvius' understanding of the charge against him.

Instead of attacking the legal sufficiency of the indictment, Mr. Silvius' Motion to Dismiss impermissibly attacks the weight of the government's evidence, and sets forth fact-dependant defenses to the charge against him. Mr. Silvius' unsupported assertions in his Motion are factual questions – not legal ones – including his claims that he did not have "the requisite intent to commit any crime" and "cannot be held liable under the DMCA." As the Supreme Court stated in *Costello*, the Fifth Amendment's grand jury guarantee does not give defendants

5

the right to a "preliminary trial to determine the competency and adequacy of the evidence" underlying the indictment. *Costello*, 350 U.S. at 363. Mr. Silvius' intent, and the other factual assertions that comprise Mr. Silvius' defenses to the indictment, turn in major part on the credibility and demeanor of witnesses, and are particularly within the province of the jury. *United States v. Long*, 952 F.2d 1520, 1525 (8th Cir. 1991).

Mr. Silvius essentially admits in his reply brief that a motion to dismiss is not capable of determination before trial if it involves questions of fact rather than law. (Reply p. 1.) Given this obstacle to dismissal of the indictment, Mr. Silvius argues for the first time on reply that 17 U.S.C. § 1201 is void as a matter of law because it is unconstitutionally vague. He points out that the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. (Reply p. 2 (citing *Kolender v. Lawson*, 461 U.S. 352, 357).) Mr. Silvius goes on to argue that 17 U.S.C. § 1201 is unconstitutionally vague because he was never provided with notice that the statute prohibits the sale of unflashed modification chips, which he claims are incapable of circumventing any technology until flashed by the consumer. He states that modchips are essentially similar to drug paraphernalia like pipes and bongs, which by themselves are incapable of performing any illegal functions, and are not illegal until the consumer chooses to use them in a prohibited manner. Mr. Silvius further interprets the government's experts' determination that modchips have only limited commercially significant purpose or use other than to circumvent technological protection measures to mean that there must be at least some significant legal uses for them.

Mr. Silvius' void-for-vagueness argument does not provide a purely legal question on the

6

basis of which the Court may dismiss the indictment.  Indeed, the Sixth Circuit recognizes that it is well established that vagueness challenges to statues which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.  *Cohoon v. Rees*, 820 F.2d 784, 785-86 (citations omitted).  Further, when a statute clearly applies to a defendant's conduct he may not successfully challenge that statute for vagueness.  *Id.*  There are too many unresolved questions of fact at this stage of the case to determine whether Mr. Silvius has standing to challenge 17 U.S.C. § 1201 on vagueness grounds.  The proper course is to let a jury decide the questions of fact.

## III.  **CONCLUSION**

The Motion to Dismiss the Indictment sets forth fact-dependant defenses to the charge against Mr. Silvius; it does not challenge the legal sufficiency of the indictment.  Factual questions are for the jury to decide.  For this reason, and all of the reasons stated herein, the Motion to Dismiss the Indictment is DENIED.

**IT IS SO ORDERED**

**DONALD C. NUGENT**
**UNITED STATES DISTRICT JUDGE**

DATED:  November 21, 2012

8